UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GARRETT BEAN and ANEILIA BEAN, | § | No. SA:14–CV–604–DAE |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| MINERVA ALCORTA, | § | |
| | § | |
| Defendant. | § | |

ORDER: (1) GRANTING PLAINTIFFS' MOTION TO STRIKE;
(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S FIRST
MOTION TO STRIKE; (3) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S SECOND MOTION TO STRIKE; (4) DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT; AND (5) DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Before the Court are Motions to Strike and Motions for Summary

Judgment filed by Plaintiffs Garrett and Aneilia Bean (collectively, "Plaintiffs")

and Defendant Minerva Alcorta ("Defendant").  (Dkts. ## 34, 38, 42, 43, 46.)

On July 9, 2015, the Court heard oral argument on the Motions.  Jeffrey E. Dahl,

Esq., appeared at the hearing on behalf of Plaintiffs; Rolando L. Rios, Esq.,

appeared at the hearing on behalf of Defendant.  After reviewing the Motions and

the supporting and opposing memoranda, and considering the parties' arguments at

the hearing, the Court **GRANTS** Plaintiffs' Motion to Strike (Dkt. # 43),

**GRANTS IN PART AND DENIES IN PART** Defendant's First Motion to Strike

1

(Dkt. # 42), **GRANTS IN PART AND DENIES IN PART** Defendant's Second

Motion to Strike (Dkt. # 46), **DENIES** Plaintiffs' Motion for Summary Judgment

(Dkt. # 38), and **DENIES** Defendant's Motion for Summary Judgment (Dkt. # 34).

<u>BACKGROUND</u>

On November 22, 2013, Garry Bean, father of Plaintiffs Garrett and

Aneilia Bean, was killed by a gunshot wound.  (Dkt. # 34, Ex. 1.)  According to the

police report, an unidentified woman at the scene told law enforcement officers

that she had shot her boyfriend.  (Dkt. # 38, Ex. 2.)  The Bexar County Medical

Examiner's Office ruled Garry Bean's death a homicide.  (Dkt. # 34, Ex. 1.)  The

autopsy report concluded that Garry Bean "died as a result of a gunshot wound to

the right arm which exited the arm and re-entered the body through the right chest,

resulting in injuries to the liver, aorta, left renal vein, left kidney and spleen and

causing marked bleeding into the peritoneal cavity."  (Dkt. # 38, Ex. 3 at 7.)  On

December 31, 2014, Defendant was indicted for manslaughter in connection with

Garry Bean's death in Cause No. 2014-CR-10551, currently pending in Bexar

County District Court.  (Dkt. # 38, Ex. 6; <u>id.</u>, Ex. 7 at 5.)

Prior to his death, Garry Bean was employed by the Healing Staff.

(Dkt. # 34, Ex. 2; Dkt. # 38, Ex. 1.)  His employment benefits included basic life

insurance coverage and accidental death and dismemberment coverage

underwritten by Guardian Life Insurance Company of America ("Guardian").

(Dkt. # 34, Ex. 2; Dkt. # 38, Ex. 1.)  Defendant was the primary beneficiary of the policy, while Plaintiffs were each 50% contingent beneficiaries.  (Id.)

In April 2014, Plaintiffs both submitted claims to Guardian.  (Dkt. # 38, Exs. 4, 5.)  Due to the circumstances surrounding Garry Bean's death, Guardian filed a complaint in interpleader naming Plaintiffs and Defendant as defendants.  (Dkt. # 1.)  Guardian chose to file an interpleader complaint instead of paying the life insurance policy benefits to Defendant, the primary beneficiary, because Defendant was "accused of [Garry Bean's] murder and/or causing his death."  (Id. ¶ 15.)  On July 28, 2014, Plaintiffs filed an answer to Guardian's complaint and simultaneously filed a cross-claim against Defendant.  (Dkt. # 7.)  In their cross-claim, Plaintiffs asserted that Defendant forfeited her right to any proceeds of the life insurance policy by willfully causing the death of the insured.  (Id. ¶ 25.)  Plaintiffs claim that as a result, the proceeds of the policy should be divided equally between them as contingent beneficiaries.  (Id.)

On October 27, 2014, the Court granted Guardian's Unopposed Motion for Granting of Interpleader, Deposit of Disputed Policy Benefit Less Attorneys' Fees and Costs, and Dismissal.  (Dkt. # 16.)  On November 3, 2014, the Court entered an Order to Receive and Deposit Monies into Court's Registry.  (Dkt. # 18.)  Pursuant to that Order, Guardian deposited $127,500, which

represents the proceeds of Garry Bean's life insurance policy less reasonable attorneys' fees and costs, into the Court's registry.  (Id.)

On November 7, 2014, Plaintiffs filed their First Motion for Summary Judgment (Dkt. # 19), and Defendant did not file a Response.  On February 4, 2015, the Court heard oral argument on Plaintiffs' Motion.  Defendant appeared at the hearing and stated that she wished to hire an attorney to represent her in this matter.  On the same day, the Court denied Plaintiffs' Motion and granted Defendant one month to obtain counsel.  (Dkt. # 25.)  Defendant's counsel made an appearance on March 3, 2015.  (Dkt. # 26.)

On May 12, 2015, Defendant filed an Amended Motion for Summary Judgment.   (Dkt. # 34.)  On May 26, 2015, Plaintiffs filed a Response (Dkt. # 36), and on June 12, 2015, Defendant filed a Reply (Dkt. # 40).  Meanwhile, on June 8, 2015, Plaintiffs filed their own Second Motion for Summary Judgment.  (Dkt. # 38.)  On June 22, 2015, Defendant filed a Response (Dkt. # 45), and on June 29, 2015, Plaintiffs filed a Reply (Dkt. # 49).

On June 12, 2015, Defendant filed her First Motion to Strike. (Dkt.  # 42.)  On June 19, 2015, Plaintiffs filed a Response to Defendant's Motion to Strike (Dkt. # 44), and on June 26, 2015, Defendant filed a Reply (Dkt. # 47). On June 19, Plaintiffs also filed their own Motion to Strike Defendant's Reply

(Dkt. # 43), and on June 26, 2015, Plaintiff filed a Response (Dkt. # 48).  On June 22, 2015, Defendant filed her Second Motion to Strike.  (Dkt. # 46.)

LEGAL STANDARD

Summary judgment is proper where the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

5

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

<u>DISCUSSION</u>

Defendant asks the Court to grant summary judgment in her favor because there is no evidence that she willfully caused the death of Garry Bean and she, as the primary beneficiary of the life insurance policy, is entitled to the proceeds.  (Dkt. # 34.)  Plaintiffs counter that they are entitled to summary judgment because Defendant forfeited her rights under the policy because she willfully brought about Garry Bean's death.  (Dkt. # 38.)

Additionally, both parties ask the Court to strike pieces of evidence offered by the other in support of their respective Motions for Summary Judgment. (Dkts. ## 42, 43, 46.)  The Court first addresses the parties' Motions to Strike, and then addresses the merits of the parties' cross Motions for Summary Judgment.

I.      <u>Plaintiffs' Motion to Strike</u>

Plaintiffs ask the Court to strike paragraph 9 of the Affidavit of Charles Bunk ("Bunk"), which Defendant attached to her Reply to her Motion for Summary Judgment.  (Dkt. # 43.)  Bunk is a criminal defense attorney appointed to represent Plaintiff in the manslaughter case pending in Bexar County District Court.  ("Bunk Aff.," Dkt. # 40, Ex. 1 ¶ 1.)  Paragraph 9 of Bunk's Affidavit states:

> In my professional opinion, based on my 15 years' experience in charging defendants with criminal cases such as this one, the criminal charges against [Defendant] should have never been brought and no negative connotation should be taken from her assertion of her constitutional rights.

(Bunk Aff. ¶ 9.)  In other words, Bunk testifies that in his professional opinion, Defendant is not guilty of the charges pending against her.  Plaintiffs argue that this paragraph should be stricken because (1) Bunk has not been designated as an expert in this case, (2) Bunk's opinion does not meet the fundamental requirement of expert testimony because it does not assist the Court in understanding the evidence or in determining a fact at issue, and (3) Bunk's opinion lacks the foundation and reliability necessary to support expert testimony.  (Dkt. # 43 at 2.)  Defendant responds that she does not offer paragraph 9 to assist the Court in assessing the strength of the case against her, but rather offers to it show why she is asserting her Fifth Amendment privilege.  (Dkt. # 48.)

The Fifth Circuit has "consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence." BNY Mellon, N.A. v. Affordable Holdings, Inc., No. 1:09CV226-SA-JAD, 2011 WL 2746301, at *1 (N.D. Miss. July 12, 2011) (collecting cases); see also Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."). Thus, even if Bunk had been properly designated as an expert pursuant to Rule 26, the content of paragraph 9 of his Affidavit is not the proper subject of expert testimony.

Not all witnesses who offer opinion testimony are expert witnesses. Under Rule 701 of the Federal Rules of Evidence, lay witnesses may offer opinion testimony under certain conditions:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are a) rationally based on the perception of the witness, b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The Advisory Committee Notes to the 2000 Amendments explain that "[l]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which

8

can be mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee's note. Here, Bunk offers his "professional" opinion as to the strength of the case against Defendant based on his fifteen years of experience as a prosecutor. (Bunk Aff. ¶¶ 5, 9.) Because his opinion is based on his experience and position as a specialist in the field of criminal law, paragraph 9 of his Affidavit is not admissible as the opinion of a lay witness. The Court therefore **GRANTS** Plaintiffs' Motion to Strike paragraph 9 of Bunk's Affidavit. (Dkt. # 43.)

II.   <u>Defendant's Motions to Strike</u>

In two separate Motions, Defendant asks the Court to strike the police report attached to both Plaintiffs' Motion for Summary Judgment and their Response to Defendant's Motion for Summary Judgment as inadmissible hearsay. (Dkts. ## 42, 46.) Specifically, Defendant objects to the statement "I shot my boyfriend, please help him," (Dkt. # 36, Ex. 1 at 4; Dkt. # 38, Ex. 2 at 4), on the grounds that it is inadmissible hearsay within hearsay. (Dkt. # 42 at 2; Dkt. # 46 at 2.) Defendant also objects to the following statements contained in both Plaintiffs' Response to Defendant's Motion for Summary Judgment and Plaintiffs' own Motion for Summary Judgment:

> "[Garry Bean] was not facing her nor coming at her when she shot him. Rather she was on his right while he was standing near or walking towards a bedroom closet and facing that closet," and "[t]he path of the bullet makes it clear that he was not facing her but rather he was approaching the bedroom closet and she was directly to his right. If she was ahead or behind him to his right the bullet would not

9

have travelled in the manner that it did, nor could it have travelled in
such a path if his body was facing hers."

(Dkt. # 36 at 8–9; Dkt. # 38 at 8–9.)  Defendant objects to these statements on the

grounds that they are inadmissible expert testimony.  (Dkt. # 42 at 2–3; Dkt. # 46

at 2–3.)

### A.   "I Shot My Boyfriend"

Defendant objects to the statement "I shot my boyfriend, please help"

contained in the police report, on the grounds that it is inadmissible hearsay within

hearsay.  An out of court statement offered to prove the truth of the matter asserted,

or hearsay, is not ordinarily admissible evidence.  Fed. R. Evid. 801(c), 802.

However, hearsay is admissible if it falls under one of the exceptions outlined in

Rule 803 of the Federal Rules of Evidence.  Fed. R. Evid. 803.  Defendant initially

argued that statement at issue involves two "levels" of hearsay: the police report in

which the statement was recorded, and the statement itself.  In her Reply,

Defendant withdrew her hearsay objection to the police report,[1] but maintains that

---

[1] Police reports may be admissible pursuant to the public records exception to the
hearsay rule.  Fed. R. Evid. 803(8); Reliastar Life Ins. Co. v. Thompson, No. M–
07–140, 2008 WL 4327259, at *2 (S.D. Tex. Sept. 16, 2008).  That rule creates an
exception for "[a] record or statement of a public office if it sets out . . . in a civil
case . . . factual findings from a legally authorized investigation and . . . neither the
source of information nor other circumstances indicate a lack of trustworthiness."
Fed. R. Evid. 803(8).  In the Fifth Circuit, such reports are presumed to be
trustworthy and admissible.  Moss v. Ole S. Real Estate, Inc., 933 F.2d 1300, 1305
(5th Cir. 1991).  In light of this presumption, the party opposing the report's
admission has the burden of proving untrustworthiness.  Id.  Defendant does not

the statement "I shot my boyfriend, please help" is inadmissible hearsay.  (Dkt.

# 47.)

   Plaintiffs contend that the statement "I shot my boyfriend" is

admissible under the exception to the hearsay rule for excited utterances.[2]  (Dkt.

# 44 at 2.)  Under Rule 803(a), an excited utterance is "a statement relating to a

startling event or condition made while the declarant was under the stress of

excitement caused by the event or condition."  Fed. R. Evid. 803(a).  "For a

statement to be admissible under Rule 803(2), there must have been a startling

event or occurrence rendering normal reflective thought processes inoperative; the

statement must have been a spontaneous reaction to the event or occurrence and

not the result of reflective thought; and the statement must relate to the startling

condition."  United States v. Angleton, 269 F. Supp. 2d 878, 890 (S.D. Tex. 2003).

   The police report does not reveal how much time elapsed between the

shooting and the time the statement was made.  However, it does report that the

declarant was "crying histerically [sic] with blood on both hands and her shirt."

---

suggest that the report as a whole is untrustworthy.  Therefore, the Court finds that
the report is admissible.

[2] Plaintiffs also argue that the statement is admissible as an admission by a part
opponent under Rule 801(d)(2) and a statement against interest under Rule
804(b)(3).  However, admissibility under both of those rules is conditioned on
Defendant being the woman who made the statement.  Defendant does not admit to
making the statement, and the police report does not identify Defendant as the
woman who made the statement.  Therefore, neither of those rules is applicable in
this case.

(Dkt. # 38, Ex. 2 at 4.)  The Advisory Committee Notes state that "the standard of measurement is the duration of the excitement.  How long can excitement prevail?  Obviously there are no pat answers and the character of the transaction or event will largely determine the significance of the time factor."  Fed. R. Evid. 803 advisory committee's note (internal quotation marks omitted).  The declarant's hysterical condition, along with the disturbing character of the event at issue, persuades the Court that the statement was a "spontaneous reaction" to the shooting and was not the result of reflective thought.

Defendant nevertheless argues that the statement is not admissible as an excited utterance because the identity of the declarant is unknown, and when the declarant is unknown, it becomes impossible to "uncover evidence of inconsistency or bias . . . impinging on the right under Rule 806 to cross examine the declarant or attack the declarant's credibility."  (Dkt. # 47 at 4.)  In a recent dissenting opinion, Justice Scalia noted that "[i]t is even unsettled whether excited utterances of an unknown declarant are <u>ever</u> admissible."  <u>Navarette v. California</u>, 134 S. Ct. 1683, 1694 (2014) (Scalia, J., dissenting) (emphasis in the original).  As Justice Scalia explained, "[s]ome courts . . . have taken the position that an excited utterance is admissible only if other proof is presented which supports a finding of fact that the exciting event did occur."  <u>Id.</u> (quoting 2 K. Bourn, McCormick on Evidence 367–68 (7th ed. 2013)).  Additionally, "the courts have been reluctant to

12

admit such statements, principally because of uncertainty that foundational requirements, including the impact of the event on the declarant, have been satisfied."  Id. (quoting McCormick at 372).

In this case, neither of the concerns identified by Justice Scalia is present.  It is undisputed that the event occurred: Defendant agrees that Garry Bean was shot and killed on November 22, 2013.  Furthermore, the police report provides evidence of the impact of the event on the unknown declarant, stating that that the declarant was "hysterical."  As for Defendant's concerns regarding inconsistency, bias, and attacks on the declarant's credibility, the Court notes that the excited utterance exception exists precisely because "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."  Fed. R. Evid. 803 advisory committee's note (citing 6 Wigmore § 1747 at 135).  In other words, the exception exists because the excitement of the event eliminates concerns about fabrication and unreliability.  In the context of this statement and the circumstances under which it was made, the Court finds that the concerns inherent in admitting the statement of an unknown declarant are not present, and that the statement is admissible under the excited utterance exception.

B.     "Expert" Testimony

Defendant also objects to statements in Plaintiffs' Response to her

Motion for Summary Judgment and Plaintiffs' own Motion for Summary

Judgment regarding the path of the bullet that killed Garry Bean and the location of

the shooter in relation to Garry Bean, on the grounds that the statements are

inadmissible expert testimony.  (Dkt. # 42 at 2–3; Dkt. # 46 at 2–3.)  Defendant

argues that the statements are "opinions based on scientific, technical, or other

specialized knowledge within the scope of Federal Rule of Evidence 702."  (Dkt.

# 42 at 2–3; Dkt. # 46 at 2–3.)  Plaintiffs respond that their deductions are "not

within the realm of expert testimony but rather [are] derived from the application

of common sense to the findings within the autopsy report."  (Dkt. # 44 at 3.)

Although courts are split as to whether testimony regarding bullet

trajectory requires "specialized knowledge" within the meaning of Rule 702, it

appears that the weight of authority favors finding that bullet trajectory analysis

requires at least some degree of specialized expertise.  See, e.g., McGrath v.

Tavares, 757 F.3d 20, 26–27 (1st Cir. 2014) (holding that photographs of bullet

holes were not enough to show where an officer was standing when he fired his

gun absent expert testimony); Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir.

2007) (finding that officer's opinion regarding location of shooter based on his

experience as a law enforcement officer lacked reliable methodology required of

expert testimony); Stephens v. Kemp, 846 F.2d 642, 668 (11th Cir. 1988)

("[C]ommon sense should have suggested . . . that such matters could not be

adequately analyzed by laymen."); Reed v. City of Modesto, No. 1:11-CV-1083

AWI GSA, 2015 WL 1889048, at *8 (E.D. Cal. Apr. 24, 2015) (stating that

although "being shot in the back supports the general assertion that the shooter was

behind the shootee without the need for an expert witness . . . if no percipient

witness can testify that [the plaintiff] was shot in the back, then some form of

expert testimony . . . may be necessary"); Rountree v. Kirkpatrick, No. 11-CV-

6188 (MAT), 2012 WL 1413054, at *18 (W.D.N.Y. Apr. 23, 2012) ("[B]ullet

trajectory analyses have long been a proper subject of expert testimony.").

In this case, the Court finds the weight of authority persuasive and

holds that Plaintiffs' deductions regarding the bullet trajectory require specialized

knowledge and thus constitute impermissible "expert testimony."  The Court

therefore strikes those portions of Plaintiffs' Response and Motion for Summary

Judgment, and **GRANTS IN PART AND DENIES IN PART** Defendant's

Motions to Strike.  (Dkts. ## 42, 46.)

III.    Cross Motions for Summary Judgment

Defendant asks the Court to grant summary judgment in her favor

because there is no evidence that she willfully caused the death of Garry Bean and

she, as the primary beneficiary of the life insurance policy, is entitled to the

proceeds.  (Dkt. # 34.)  Plaintiffs counter that they are entitled to summary

judgment because Defendant forfeited her rights under the policy by willfully

bringing about Garry Bean's death.  (Dkt. # 38.)

I.      Applicable Law

            Under the Texas slayer statute, "[a] beneficiary of a life insurance

policy or contract forfeits the beneficiary's interest in the policy or contract if the

beneficiary is a principal or an accomplice in wilfully bringing about the death of

the insured."  Tex. Ins. Code § 1103.151.   A beneficiary need not be convicted of

murder to forfeit his or her interest in the policy.   In re Estate of Stafford, 244

S.W.3d 368, 370 (Tex. App. 2008) ("Section 1103.151 does not require a 'final

conviction' before a beneficiary forfeits his rights to the proceeds.").  Instead, a

party seeking to establish that a beneficiary has forfeited his or her right to collect

on the policy need only prove by a preponderance of the evidence that the

beneficiary willfully brought about the death of the insured.  Medford v. Medford,

68 S.W.3d 242, 250 n.3 (Tex. App. 2002).  This may be proven by circumstantial

evidence.  Reliastar Life Ins. Co. v. Thompson, No. M–07–140, 2008 WL

4327259, at *2 (S.D. Tex. Sept. 16, 2008) (citing Thomspon v. Mayes, 707 S.W.2d

951, 955 (Tex. App 1986)).

            As a preliminary matter, the Court considers whether the Texas slayer

statute is preempted by the Employee Retirement Income Security Act ("ERISA"),

which establishes a comprehensive federal scheme to protect participants and beneficiaries of employee benefit plans.  See 29 U.S.C. § 1001 et seq.; Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987).  ERISA's preemption clause provides that ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Pursuant to this provision, "any state law which has a connection with or reference to an employee benefit plan is generally preempted."  Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris, 217 F. Supp. 2d 759, 760 (E.D. Tex. 2002) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983)).  Where ERISA preempts state law, but is silent on a particular question, courts look to federal common law to fill the gap.  Coop. Benefit Adm'rs., Inc. v. Ogden, 367 F.3d 323, 329 (5th Cir. 2004).

The Supreme Court has suggested in dicta that ERISA does not preempt state slayer statutes.  Egelhoff v. Egelhoff, 532 U.S. 141, 152 (2001) ("[B]ecause the [slayer] statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.").  Some lower courts that have considered the issue have voiced the opinion that preemption is doubtful.  See, e.g., Harris, 217 F. Supp. 2d at 761; New Orleans Elec. Pension Fund v. Newman, 784 F. Supp. 1233, 1236 (E.D. La. 1992); New Orleans Elec. Pension Fund v. DeRocha, 779 F. Supp. 845, 850 (E.D. La. 1991); Mendez-Bellido v. Bd. of Trs. of Div. 1181, 709 F. Supp. 329, 331 (E.D.N.Y. 1989).  Many others,

however, have "declined to resolve the issue because federal common law, which encompasses the equitable principle that a person should not benefit from his wrongs . . . almost universally produces the same result as state law." Nale v. Ford Motor Co. UAW Ret. Plan, 703 F. Supp. 2d 714, 722 (E.D. Mich. 2010); see also Box v. Goodyear Tire & Rubber Co., 51 F. Supp. 3d 1147, 1152 (N.D. Ala. 2014); Conn. Gen. Life Ins. Co. v. Riner, 351 F. Supp. 2d 492, 497 (W.D. Va. 2005). Consequently, "[i]t has long been a principle of federal common law that [one spouse who intentionally kills another spouse] should not be rewarded with insurance benefits for taking a life." Harris, 217 F. Supp. 2d at 761 (citing Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886)).  The Court follows the lead of those courts that have declined to resolve the question of whether state slayer statutes are preempted by ERISA, because the outcome of this case remains the same whether the Court applies the Texas statute or federal common law.

II.     Evidence of Willful Killing

The Court thus turns to the evidence submitted by the parties to determine whether Defendant willfully or intentionally caused Garry Bean's death. Plaintiffs argue that the following evidence conclusively establishes that Defendant willfully shot and killed Garry Bean: (1) her indictment for manslaughter, (2) the police and autopsy reports, (3) her invocation of her Fifth Amendment right against self-incrimination, and (4) the timing of Garry Bean's death and the nature of his

18

relationship with Defendant.  (Dkt. # 38.)  Defendant contends that none of

Plaintiffs' evidence identifies her as the person who shot Garry Bean, and that the

evidence does not suggest that the death was caused willfully or intentionally.

Defendant further states that she would invoke her privilege against

self-incrimination in response to any questions about Garry Bean's death.  (Dkt.

# 34.)  The Court addresses each argument below.

      A.    <u>Indictment for Manslaughter</u>

      Plaintiffs first argue that Defendant's indictment for manslaughter is

sufficient to establish by a preponderance of the evidence that Defendant willfully

caused Garry Bean's death.  (Dkt. # 38.)  In support of their position, Plaintiffs cite

<u>Administrative Committee for the H.E.B. Investment and Retirement Plan v.</u>

<u>Harris</u>, 217 F. Supp. 2d 759, 760 (E.D. Tex. 2002) and <u>Prudential Insurance Co. of</u>

<u>America v. Neal</u>, 768 F. Supp. 195 (W.D. Tex. 1991).  In <u>Harris</u>, the

husband-beneficiary was indicted for murder and manslaughter in connection with

his wife-insured's death, and later pled guilty to the charges.  217 F. Supp. 2d at

760.  The court held that under both the Texas slayer statute[3] and the federal

_____

[3] <u>Harris</u> dealt with similar slayer statutes that have since been repealed.  <u>Harris</u>
compared § 41(d) of the Texas Probate Code (barring the beneficiary of a life
insurance policy "who is convicted and sentenced as a principal or accomplice in
willfully bringing about the death of the insured" from receiving the proceeds of
the policy) and § 21.23 of the Texas Insurance Code (barring the beneficiary of a
life insurance policy from receiving the proceeds of the policy "when the
beneficiary is the principal or an accomplice in willfully bringing about the death

common law, the husband was not entitled to the proceeds of his wife's insurance policy. Id. at 762. Similarly, in Neal, the wife-beneficiary was convicted of involuntarily manslaughter in connection with the death of her husband-insured. 768 F. Supp. at 197. The court, applying federal common law, found that the wife was barred from recovering the proceeds of her husband's policy. Id. at 198.

Plaintiffs acknowledge the critical difference between these cases and the case at bar: here, Defendant has not pled guilty or been convicted of any crime in connection with Garry Bean's death. (Dkt. # 38 at 8.) However, they argue that under both the Texas slayer statute and federal common law, no conviction is required to show that Defendant willfully caused the death of Garry Bean. (Id.) While this may be true, the indictment certainly does not prove by a preponderance of the evidence that Defendant willfully shot and killed Garry Bean. As Defendant notes, the indictment merely shows that there is a criminal proceeding pending against her. (Dkt. # 40 at 6.) Both Texas and federal law are equally clear that an indictment is not evidence of guilt. See United States v. Williams, 22 F.3d 580, 582 (5th Cir. 1994); Satterwhite v. State, 858 S.W.2d 412, 420 (Tex. Ct. Crim. App. 1993). Thus, the Court finds that the indictment provides no support for Plaintiffs' contention that Defendant willfully shot and killed Garry Bean. However, the Court does find that the indictment creates a genuine issue of

---

of the insured") with the federal common law. 217 F. Supp. 2d at 760–61. Both of those sections have since been repealed.

material fact as to Defendant's role in Garry Bean's death, as the grand jury found

probable cause to return an indictment against Defendant in connection with the

shooting.  The Court therefore **DENIES** Defendant's Motion for Summary

Judgment.  (Dkt. # 34).

      B.    <u>Police and Autopsy Reports</u>

      Plaintiffs next contend that the police report from the night of the

shooting and Garry Bean's autopsy report show by a preponderance of the

evidence that Defendant willfully caused Garry Bean's death.  (Dkt. # 38.)

However, as Defendant points out, the police report still suffers from the same

issue the Court identified in its Order denying Plaintiffs' first summary judgment

motion: it does not identify Defendant as the woman who told officers she shot her

boyfriend.  (Dkt. # 25 at 7.)  As the Court explained before, the police report

includes the following statement:

> [W]e approached the front door and began knocking several times for
> someone to answer.  A short time (seconds) later a female (later to be
> identified as AP) came to the door on her cell phone crying
> histerically [sic] with blood on both hands and on her shirt.  (AP) then
> stated "I shot my boyfriend, please help him."

(Dkt. # 36, Ex. 1 at 4; Dkt. # 38, Ex. 2 at 4.)  However, the report does not identify

who "(AP)" is, and the Court again finds that given this gap in the evidence, the

police report cannot support Plaintiffs' contention that Defendant shot and killed

Garry Bean.  The autopsy report presents a similar problem.  While it shows that

Garry Bean died of a gunshot wound, nothing in the report identifies the shooter.

For that reason, neither of these documents shows that Defendant willfully caused

Garry Bean's death.

C.      Fifth Amendment Privilege

Plaintiffs also argue that Defendant's assertion of her Fifth

Amendment right against self-incrimination may be used as evidence against her.

(Dkt. # 38 at 16.)  Defendant argues that her invocation prevents the Court from

entering judgment against her.  (Dkt. # 34 at 8.)  In the criminal context, a jury may

not draw an adverse inference against a defendant due to his choice to remain

silent.  Hinojosa v. Butler, 547 F.3d 285, 291 (5th Cir. 2003).  In the civil context,

by contrast, "while a person may refuse to testify . . . on the ground that his

testimony might incriminate him . . . his refusal to testify may be used against

him."  Farace v. Indep. Fire Ins. Co., 699 F.2d 204, 210 (5th Cir. 1983).  Put

otherwise, "the Fifth Amendment does not forbid adverse inferences against parties

to civil actions when they refuse to testify in response to probative evidence

offered against them."  Hinojosa, 547 F.3d at 291 (quoting Baxter v. Palmigiano,

425 U.S. 308, 318 (1976)).

Under Fifth Circuit precedent, "a party seeking summary judgment

cannot rely solely on the other party's exercise of his fifth amendment rights."

State Farm Life Ins. Co. v. Gutterman, 896 F.2d 116, 119 n.3 (5th Cir. 1990).  In a

22

similar case concerning a woman's involvement in her husband's death, the Fifth

Circuit held that the adverse inference flowing from the wife's refusal to answer

questions regarding the circumstances of her husband's death was "insufficient to

create an issue of material fact precluding summary judgment." Id. at 119. The

court continued, "[t]he assertion of the [fifth amendment] privilege, particularly on

the advice of counsel, is an ambiguous response." Id. (quoting Farace, 699 F.2d at

210–11) (alteration in the original). The court further noted that that was

particularly true where the opposing party "failed to present any other evidence to

bolster the inference." Id.

   Here, Plaintiffs attempt to rely on Defendant's invocation of her Fifth

Amendment rights along with other evidence to demonstrate that there is no

genuine issue of material fact as to whether Defendant willfully caused the death of

Garry Bean. Like the wife in Gutterman, Defendant invoked her right on the

advice of counsel in light of an ongoing criminal investigation, rendering her

invocation ambiguous under Fifth Circuit precedent. ("Alcorta Decl.," Dkt. # 34-4

¶ 4.) For that reason, the Court finds that the invocation itself is of little probative

value in this case.

   D.  Other Relevant Evidence

   Finally, Plaintiffs present the Court with several facts regarding the

timing of Garry Bean's death and the nature of his relationship with Defendant.

(Dkt. # 38 at 12–14.)  Specifically, Plaintiffs note that (1) Garry Bean was killed 28 days after naming Defendant as the primary beneficiary on his life insurance policy (id., Exs. 1, 2); (2) colleagues state that Garry Bean and Defendant had a "volatile" relationship and Defendant exercised significant control over Garry Bean's life, including limiting his spending ("Acevedo Aff.," id., Ex. 9; "Lara Aff.," id., Ex. 10); (3) Defendant faced financial difficulties (id., Ex. 7 at 5–6; id., Ex. 8 at 6); (4) Defendant broke the headlamp of Garry Bean's motorcycle on the night of his death (id., Ex. 7 at 4); and (5) Defendant is an experienced pool player who "knows how to aim and shoot at a target."[4]  (Dkt. # 38 at 12–14.)

The Court considers this evidence along with the indictment, police report, and autopsy report, and finds that none of Plaintiffs' evidence, even in the aggregate, is enough to show by a preponderance of the evidence that Defendant willfully caused the death of Garry Bean.  It shows that Garry Bean died of a gunshot wound and that a woman at the scene told officers she had shot him.  It perhaps shows that Defendant's relationship with Garry Bean was tumultuous at times, but it certainly does not identify Defendant as the shooter or as the woman who spoke with law enforcement officers at the scene.  Because Plaintiffs have failed to meet their burden of establishing by a preponderance of the evidence that

---

[4] The Court certainly agrees with Plaintiffs that "[t]he fact that [Defendant] is an avid pool player does not increase the likelihood that she would shoot and kill someone," which is the only issue relevant here.

Defendant willfully killed Garry Bean, the Court **DENIES** Plaintiffs' Motion for Summary Judgment.  (Dkt. # 38.)

CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Plaintiffs' Motion to Strike (Dkt. # 43), **GRANTS IN PART AND DENIES IN PART** Defendant's First Motion to Strike (Dkt. # 42), **GRANTS IN PART AND DENIES IN PART** Defendant's Second Motion to Strike (Dkt. # 46), **DENIES** Plaintiffs' Motion for Summary Judgment (Dkt. # 38), and **DENIES** Defendant's Motion for Summary Judgment (Dkt. # 34).  The parties are further **ORDERED** to file an advisory with the Court at the conclusion of Defendant's criminal trial. Should Defendant's criminal trial date be continued, the parties must advise the Court of the new trial date.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 9, 2015.

_____

David Alan Ezra
Senior United States District Judge